# COMMON PLEAS OF LUZERNE COUNTY.

### PEELE vs. GREENE, et al.

ASSIGNEE OF CHOSE IN ACTION—EQUITIES IN THIRD PARTIES—.
JUDGMENT ENTERED SAME DAY WITH MORTGAGE IN FRAUD
OF MORTGAGEE—MERGER BY DEED TO MORTGAGEE.

1.   The assignee of a chose in action takes it subject only to equities residing in the orig-
inal contracting party, and not to equities in third persons.

2.   A held a mortgage against B and C, brothers.   Under an arrangement he took a new
mortgage against the property of B. alone, releasing the old and recording the new mort-
gage the same day.   Unknown to A, B at the same time confessed judgment to C, which
was entered up the same day with the new mortgage, though subsequent to it.   It was
known that A expected his mortgage to be a first lien.   Sometime after, C sold his judgment
at a discount to D.   On a bill to postpone the lien of the judgment to that of the mortgage,
HELD, that though the entry of the judgment to the prejudice of his mortgage was a fraud
on A, D an assignee for value without notice was not affected thereby, and was entitled to
come in pro rata with the mortgage to the amount actually paid for the judgment.

3.   B being pressed on the mortgage, made a deed of the property to A.   HELD, that
this being only done for the purpose of further security, there was no merger of the mort
gage.

Sur master's report and exceptions.

Bill in equity to postpone the lien of a judgment, con-
fessed by Geo. W. to S. M. Greene and now held by Pot-
ter for value, to a mortgage given by Geo. W. Greene to
plaintiff.

The master reported the following facts:

Peele held a mortgage for $3,000, given by the two
Greenes, on property in Benton township, owned by them
in common, to secure any indebtedness incurred to Peele
by Geo. W. Greene, as his agent in the sale of sewing
machines.   Sometime in October, 1873, the Greenes ar-
ranged an exchange of the Benton farm for a house and
lot in Hyde Park, and requested Peele to exchange his
mortgage for one on the latter property.   A partial pay-
ment was to be made, and the new mortgage taken for
$2,000.   Peele consented, and at his instance S. M. Greene
made search for liens against the lot, and reported that he
found nothing.   On October 24th, the exchanges were
consummated at Scranton, and the same day Peele, ac-
companied by S. M. Greene, went to Wilkes-Barre, the

county seat, where he recorded his new and satisfied the old mortgage. It was half-past five in the afternoon when this was done. After this, the same day, just at the close of office hours, Greene entered a judgment note against his brother, Geo. W., for $2,000. This note represented the interest of S. M. Greene on the exchange of the properties, the deed of the lot being to Geo. W. alone. Peele knew nothing about this note nor its entry, until May, 1875.

In March, 1874, S. M. Greene sold the judgment to Potter, for $1,000. · Potter being informed at the time of the existence of the mortgage, and having previously known of the exchange of properties stated. He knew nothing, however, of Peele's previous mortgage. At this time Greene was indebted to Peele on sewing machine transactions above the face of the mortgage.

In November, 1874, Peele pressed Greene for payment, and threatened proceedings on his mortgage. To save expense, Greene offered to convey the property. This was accepted, but Peele at the same time stated he did not release his mortgage.

The master reported that the entry of the judgment by S. M. Greene, to the prejudice of Peele's mortgage was, under the circumstances, in bad faith, and would estop him from setting it up against Peele, but that Potter, being an assignee for value without notice, could not be affected by any equity in Peele, a third party, and that the judgment was good in his hands, at least to the amount actually paid for it.

*J. Vaughan Darling* (*Lewis* with him), for exceptions.

I. A mortgage may be regarded as a chose in action, or a conveyance upon condition.

*a.* As the former—

At law, a chose was not transferable, and chancery never attempted to reach the title. It merely enforced the rights of a purchaser by compelling recognition of his beneficial ownership. Negotiable notes are an extension of this innovation, and so, the assignability of bonds

in this state, under act of 1715.   But other choses   stand as before.

The question, therefore, remains one of title, and   how can the owner transfer a higher than he himself has.  The master finds the entry of the judgment by Greene, was  a fraud upon the plaintiff, and the security   in   his   hands invalid against our mortgage.   How   can   Potter   stand higher?

Judge Strong, in Wetherill's Appeal, 3 Gr. 281—a case relied on by the master—recognizes the force of this contention, but believing the question settled the other way, he so rules.   But,

1.   He is misled in this idea: the law is far from being so settled.   2 Lead. Cases Eq. 4th Am. Ed. 55 & 1673.

2.   The case could have well been decided on the question of laches, and that is where it should in   fact   stand.

3.   As a conveyance, the mortgage vested title in   the plaintiff, though defeasible on performance of  the   condition.   The entry of the judgment by Greene in  fraud  of the mortgage, immediately raised an equity   in   plaintiff against this judgment.   The title of the   conveyance   is protected by this equity.  The equity under which Potter seeks protection is subsequent, and so deferred.

II.   The cases seemingly *contra* to our contention  will be found to be—

1.   Bonds, as to which, in this state, the legal   assignee has a very different status, from the assignee of an  ordinary chose.

2.   Mortgages, which are here regarded  as  more  than mere choses in action.

b.   When the party has   prejudiced   his   standing  by laches.

III.   For cases in which the courts have sustained like principles, see

Britton's Appeal, 9 Wr. 172.

Haymaker's Appeal, 3 Smith, 306.

Claason's Appeal, 10 H. 359.

*W. W. Lathrope*, contra.

Latent equities in third parties can not affect the assignee for value of a chose in action, without notice.

Mott vs. Clark, 9 Barr, 404.

Hendrickson's Appeal, 12 H. 365.

Wetherill's Appeal, 3 Gr. 287.

Murray vs. Lylburn, 2 Jh. Ch. 443.

The rule is founded in reason. Otherwise a purchaser would have no protection. The utmost diligence would fail to discover such defects.

May 12th, 1879.   THE COURT (HANDLEY, J.)

This is an application for an injunction to restrain Potter, one of the defendants, from selling certain lands and from assigning and transferring the judgment upon which such sale is about to be made, unless a release of the lien thereof be executed. The plaintiff also prays that if the court be of the opinion that the acceptance, by the plaintiff, of the conveyance mentioned in this bill of complaint, did not constitute a merger, that a decree, establishing the mortgage and postponing the lien of the judgment assigned to Potter be made. Also, that if the court be of the opinion that as a matter of law the acceptance of the deed in question constitutes such a merger, that a decree be entered restraining the said Potter from in any manner setting up and availing himself of the said judgment, as against the plaintiff, or upon the said land, until the payment in full of all indebtedness secured by said mortgage, with interest and costs. It was conceded by counsel for plaintiff, on the argument of these exceptions, that the facts in this case were correctly found, but that the master erred in the law.

There can be no doubt but that the deed to Peele was not intended for any other purpose than as additional security to the mortgage. Hence there was no merger, because the moment the debt in question is paid, Peele is in duty bound to mark the mortgage satisfied, and to reconvey the premises to the original grantor.

On the day the transfer of the property in question was made, one defendant executed his judgment note to the

other defendant, and this note was entered on the same day the mortgage in question was executed.

That a fraud was intended upon the plaintiff by these two defendants there can be no more doubt than that the transaction of which the plaintiff complains took place. How then is Potter affected by this fraud?

The master says, as a purchaser for value and without actual notice, Potter is entitled at least to the amount actually paid by him, to protection against all the world except the defendant. The equities to which his purchase is subject are those residing in the defendant only, and not in third parties. The whole question is fully reviewed and the authorities cited and discussed in Wetherill's Appeal, 3 Grant, 283. Judge Strong asks in this case, "Is then the assignee of a chose in action affected by secret equities existing against his assignor, not in the debtor, but in third persons, of which he had no notice when he purchased? This is a question," adds the Judge, "not free from difficulty, and not fully settled by authority. It is not easy to see how an assignee can take an interest superior to that which the assignor had to give. An outstanding equity against the owner of a chose in action is an ownership of part of the title to it, or a deduction from its value; if this ownership or a right of deduction be in the debtor, all the cases agree that an assignment of the chose passes it to the transferee, with all its defects upon it. Is not an equity in a third person as much a defect in title as if it existed in the obligor? Yet it has not been so treated." In the case of Murray vs. Lylburn, 2 Johns Ch. Reps., 441, Chancellor Kent held that it is a general and well settled principle that the assignee of a chose in action takes it subject to the same equities it was subject to in the hands of the assignor. But this rule is generally understood to mean the equity residing in some third person against the assignor. We have no doubt but that a fraud, as we have before said, has been practiced on the plaintiff in this case, but the evidence fails to show it. The doctrine distinctly announced in

Hendrickson's Appeal, 12 Harris, 363, protects Potter, the assignor of the judgment, at least to the extent of the amount paid for the same, with interest from the date of the assignment. We have examined the whole evidence in this case with care, and also the several cases cited in the elaborate brief of counsel for the plaintiff, but to no avail; so far as this transaction is involved between Peele and Potter.

. The case of Claason's Appeal, 10 Harris, 359, was decided on an entirely different state of facts, from the facts in the present case.

Exceptions overruled and report of master confirmed.

## NOTES OF RECENT DECISIONS IN THE SUPREME COURT OF PENNSYLVANIA.

The Act of 1836 did not take away the jurisdiction of the Court of Common Pleas over testamentary trusts where that jurisdiction had once vested.

In 1826 a testator devised certain property in trust to executors named in the will. The Court of Common Pleas, during a period of more than forty years, upon petitions of the parties in interest, appointed trustees in place of those discharged. One of the trustees, who was also administrator *d. b. n. c. t. a.*, invested the funds in a mortgage made to him as administrator. The last trustee appointed by the Common Pleas, and confirmed by the Orphans' Court collected the principal of the mortgage, and having paid the interest for several years to the cestuis que trustent, absconded, failing to account for the principal:

*Held* (affirming the judgment of the Court below), that under the circumstances of the case the trustee was duly authorized to receive the mortgage, and that the defendant ought not to be compelled to pay a second time.

PER CURIAM. Since the Act of 1836 it is the safest course in all cases of testamentary trusts to invoke the aid of the Orphans' Court.—*Anderson, admr. vs. Henzey.*